**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>**SIMON TRANSPORTATION SERVICES INC. and DICK SIMON TRUCKING, INC.,**<br><br>                    **Debtors.** | |
| **OFFICIAL COMMITTEE OF UNSECURED CREDITORS,**<br><br>                    **Plaintiff,**<br><br>v.<br><br>**REGENCE BLUE CROSS BLUE SHIELD OF UTAH,**<br><br>                    **Defendant.** | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No.  2:05CV924 DAK** |

        This matter is before the court on the Official Committee of Unsecured Creditors' (the

"Committee") appeal from a decision by the United States Bankruptcy Court for the District of

Utah in Bankruptcy Case No. 02-22906 GEC.   A hearing on the appeal was held on April 13,

2006.   At the hearing, the appellant Committee was represented by Peter W. Billings.   Regence

Blue Cross Blue Shield of Utah ("Regence") was represented by Jerome Romero.   Before the

hearing, the court considered carefully the briefs and other materials submitted by the parties.

1

Since taking the matter under advisement, the court has further considered the law and facts relating to this appeal. Now being fully advised, the court renders the following Memorandum Decision and Order.

## FACTUAL BACKGROUND

On or about August 1, 2000, Regence entered into an "Administrative Services Agreement" (the "Agreement") with Dick Simon Trucking, Inc. ("Simon"). Pursuant to the Agreement, Simon, as "employer" established a "self-insured, self-funded employee welfare benefit plan" (the "Plan") and contracted with Regence "to provide certain ministerial claims processing and related administrative services with respect to the Plan." Pursuant to the terms of the Plan, Regence served as the "Claims Administrator," providing the ministerial claim processing and related administrative services for eligible employees of Simon and their dependents. Regence provided "administrative claims payment services only" and did "not assume any financial risk or obligation with respect to claims."

As the Claims Administrator, Regence would process health care claims submitted by eligible Simon employees and their dependents under the Simon Benefits Plan, pay for those health care expenses, and then, on a weekly basis, submit an invoice to Simon for reimbursement of claims processed in the prior week. The underlying Agreement was terminated on July 31, 2001, except for that portion of the Agreement relating to Regence's payment of "run out" claims, which are claims for health care services rendered to employees or other eligible participants with dates of service on or prior to July 31, 2001.

Simon filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code on

2

February 25, 2002.   All the payments at issue in this case were made to Regence on account of services rendered by Regence, as Claims Administrator, on or within 180 days of the date of the bankruptcy filing.

The Committee brought this adversary proceeding to avoid, pursuant to 11 U.S.C. § 547(b), five payments made by Dick Simon Trucking ("Simon") during the 90-day period before Simon filed for Chapter 11 bankruptcy protection, in an amount totaling $321,269.51.

In the adversary proceeding, Regence filed a motion for partial summary judgment on the issue of whether it would have been entitled to priority status for its claim under 11 U.S.C. § 507(a)(4).   The Honorable Glen E. Clark granted Regence's motion, finding that Regence would have had a priority claim pursuant to 11 U.S.C. § 507(a)(4).   Judge Clark determined that the Plan constitutes an "employee benefit plan for purposes of  11 U.S.C. § 507(a)(4) and that the phrase "services rendered" in 11 U.S.C. § 507(a)(4) refers to the services rendered by Regence, the party asserting the § 507(a)(4) priority claim.   Thus, in order to recover, the Committee of Unsecured Creditors would have to show that the payments made to Regence allowed Regence to receive more than it otherwise would have received.

The Committee disagreed with the Bankruptcy Court's decision, and has appealed to this court, seeking reversal of the decision.

## DISCUSSION

Section § 507(a)(4) grants priority status only "for contributions to an employee benefit plan - arising from services rendered within 180 days before the date of the filing of the petition[.]

3

11 U.S.C. § 507(a)(4)(A).[1]

The Committee argues that the Tenth Circuit has held that priority claims are an exception to the general rule of equal treatment of creditors and should, therefore, be narrowly construed." *See*, *e.g.*, *State Ins. Fund v. Southern Star Foods, Inc. (In re Southern Star Foods, Inc.*, 144 F.3d 712, 714 (10th Cir. 1998)).  Given this requirement of narrow construction,  the Committee argues that there are two independent reasons why the bankruptcy court erred.  First, it argues that the Bankruptcy Court broadly–and improperly–interpreted the term "services rendered" to pertain to a third-party claims administrator.  Second, the Committee argues, the Bankruptcy Court improperly concluded that the payment to Regence was a "contribution."

The Committee maintains that the payment was in reality a repayment of credit Regence had extended to Simon to honor Simon's obligations under the self-funded employee benefit plan.

---

[1]  The statute reads, in pertinent part, as follows:

(a) The following expenses and claims have priority in the following order:
. . .
> (4) Fourth, allowed unsecured claims for contribution to an employee benefit plan–
>> (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, but only
>>
>> (B) for each such plan, to the extent of–
>>> (I) the number of employees covered by each such plan multiplied by $4,925; less
>>>
>>> (ii) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the state on behalf of such employees to any other employee benefit plan.

4

Thus, according to the Committee, it is no different than if Simon had borrowed the money from a bank.

Regence, on the other hand, urges this court to affirm the Bankruptcy Court's decision. Regence contends that every court that has addressed this specific issue (regarding the priority status of claims administrators) has found that they are entitled to priority status.  Regence also argues that the cases cited by the Committee are inapposite because they are narrowly focused on the question of whether workers' compensation insurance premiums are an employee benefit plan protected by section 507(a)(4)–a question that is not present in this case.

Having reviewed the briefing by the parties, the relevant statutory language, and the case law on this issue, the court agrees with Regence that the Bankruptcy Court's decision was correct. The Committee has not provided any authority to rebut Regence's assertion that, "in every published opinion where the § 507(a)(4) claimant served as a claims administrator for a health benefit plan, the court held that the services rendered by the Claims Administrator gave rise to § 507(a)(4) priority status."[2]  Indeed, the court is unaware of any published case that does not so hold.

Moreover, a plain reading of the statute indicates that the "services rendered" language refers to the party asserting a claim for contribution.    In *In re A.B.C. Fabrics of Tampa, Inc.*, 259

---

[2]  Regence relies on the following cases:  *In re Ivey*, 308 B.R. 752 (M.D.N.C. 2004); *Matter of Loomis Indus., Inc.*, 193 B.R. 615 (Bankr. N.D. Ga. 1996); *Allegheny Int'l v. Metropolitan Life Ins. Co.*, 138 B.R. 171 (Bankr. W.D. Pa. 1992).  *See also In re Edward W. Minte Co., Inc.*, 386 B.R. 1,7 (Bankr. D. Col. 2002) (in denying premium reimbursement, the court held that § 507(a)(4) "was intended to protect employees or administrators of employee benefit plans representing their interest.")

B.R. 759 (Bankr. N.D. Fla. 2001), the court found that the 180-day period relates to the date the claims administrator of a self-funded plan provided services: "If the fund or administrator has paid benefits and provided administrative services within 180 days prior to the filing, the obligation of the employer to the fund or administrator should be a debt for contribution to a plan for services rendered within the 180 day period." *Id.* at 767; *see also In re Braniff, Inc.*, 218 B.R. 628 (Bankr. N.D. Fla. 1998) (court rejected argument that the relevant date was the date the underlying medical services were provided to the employee, reasoning that "[u]nder § 507(a)(4)(A), it makes no difference when the claim arose as long as the 'services' to which the claim is related were provided within the 180 day period."); *In re Maxwell Newspapers, Inc.*, 192 B.R. 633 (Bankr. S.D.N.Y 1996) (court found that courts have not even considered tying "service" to that provided by employees, noting that "courts have taken for granted that the provision of insurance constitutes 'services' for purposes of section 507(a)(4)).

Regence's claim for contribution arises from "services rendered" within 180 days of the petition date, as its claim for contribution arose from the services it provided as the Claims Administrator in the week preceding the issuance of each of the invoices at issue, and in all instances within 180 days of the petition date.   Upon processing and paying the claims, Regence is entitled to assert a claim against the debtor for the amount paid to health care providers, plus its agreed administrative fee.   It is undisputed that Regence's claim arose as a result of the services it rendered as the Claims Administrator of the Dick Simon Benefit Plan.

Thus, the court finds that Regence would have been entitled to priority status for its claim under 11 U.S.C. § 507(a)(4) because the Plan constitutes an "employee benefit plan for purposes

of  11 U.S.C. § 507(a)(4), and the phrase "services rendered" in 11 U.S.C. § 507(a)(4) refers to

the services rendered by Regence, the party asserting the § 507(a)(4) priority claim.

Accordingly, for the foregoing reasons and good cause appearing, IT IS HEREBY

ORDERED that  the decision of the Bankruptcy Court is AFFIRMED.  Each party is to bear its

own costs.

DATED this 19th day of September, 2006.

BY THE COURT:

DALE A. KIMBALL
United States District Judge